**JUAN L. ROCHA**
Rocha Law Offic
AZ Bar No. 025039
P.O. Box 5965
Mesa, Arizona, 85211-5965
Tel: (480) 855-1759
Fax: (855) 327-4858
jrocha.law@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>  v.<br><br>Manuel Humberto Ozuna Munoz,<br><br>    Defendant. | Case No. 2:17-cr-1078-DGC<br><br>**MOTION TO SUPPRESS IDENTITY UNDER THE FIFTH AMENDMENT OF THE U.S. CONSTITUTION**<br><br>(Evidentiary Hearing Requested) |

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion or from an order based therein.

Defendant, Mr. Manuel Humberto Ozuna Munoz, by and through counsel undersigned, and under Federal Rule of Criminal Procedure, Rule 12(b)(3)(C), moves this Court to enter an Order suppressing his identity and statements as a product of an incriminating statement under the Fifth Amendment of the U.S. Constitution. U.S. Const. Amend. V.

This request is supported by the following Memorandum of Points and Authorities.  Mr. Munoz  also respectfully request the right to supplement his motion should additional evidence not presently disclosed by the Government become known to him.

RESPECTFULLY SUBMITTED: September 17, 2017.

*s/Juan L. Rocha*
**JUAN L. ROCHA**
Attorney for Defendant

## I.    FACTUAL BACKGROUND

On June 14, 2017, the Immigration and Customs Enforcement (ICE) Phoenix Mobile Criminal Alien Team Unit, received information that Mr. Munoz had checked into the Motel 6 on 52nd Drive in Phoenix. They were tipped off by employees at Motel 6 that he had checked into the hotel after he had used a Mexican driver license to check into the motel. Mr. Munoz did not have any outstanding warrants nor was he committing a federal, local, or state crime, or under suspicion of having committed such a crime. By all accounts he was targeted for having a Spanish surname and using a foreign identification–a proxy for alienage.[1]

Knowing he had checked into room #214, two ICE agents knocked on the door. Mr. Munoz peeked through the window and saw the ICE agents dressed in civilian clothes. They waived for him to open the door. He did and the agents walked into room #214, without a warrant and without his consent. They immediately asked him his name and he told them. The agents then followed up by asking him if there was anyone else in the room, to put on this clothes, and handcuffed him. In less than five minutes the agents escorted him out of the room and into their squad car. He was transported to the ICE field office and fingerprinted confirming his criminal and immigration history. Based on this information, the U.S. Attorney's Office later filed a criminal complaint alleging he violated 8 U.S.C. § 1326(a), Illegal Reentry of Removed Alien.

## II.   ISSUE PRESENTED

Mr. Munoz contends his identity can be suppressed under the Fifth Amendment because the Border Patrol agent failed to advise him of his *Miranda* rights despite being in custody and interrogated. His statements should also be suppressed under *Miranda*.

---

[1] There were several other defendants arrested under similar circumstances and at the same Motel 6. The criminal complaints in those cases have verbatim language and charge the defendants with the same offense. *See U.S. v. Felix–Aguilar*, CR 17-6239-mj; *U.S. v. Flores-Aviles*, CR17-6140-mj; *U.S. v. Flores-Hernandez*, CR17-6220-mj; *U.S. v. Renteria-Alvarado*, CR17-8221-mj. There are several others undersigned counsel does not include in this motion but could provide if the court requests that additional information.

**III.   LAW AND ARGUMENT**

    **A.   Mr. Munoz's Identity Can Be Suppressed Under the Fifth Amendment Because Furnishing His Name to Authorities Directly Linked Him To The Offense**.

Though the Supreme Court has established that a criminal defendant cannot suppress his identity–even when there has been some prior illegality on the part of the government under the Fourth Amendment–the Supreme Court has acknowledged that identity may be suppressed under the Fifth Amendment.[2]

In *Hiibel v. Sixth Judicial District*,[3] the Supreme Court suggested that the Fifth Amendment may furnish the right to suppress identity "where there is a substantial allegation that furnishing identity at the time of the stop would have given the police a link in the chain of evidence needed to convict the individual of a crime."[4]

In *Hiibel*, the State charged and convicted the defendant of a statute called the "stop and identify" law. Asking the Supreme Court to suppress his identity, the defendant raised both a Fourth Amendment and Fifth Amendment argument; regarding the former, the Court reaffirmed its general rule that identity cannot being suppressed under the Fourth Amendment and thus rejected defendant's argument. Regarding the latter argument, however, the Court conceded his argument had traction. According to Justice Kennedy, the Fifth Amendment's privilege against self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might so used."[5]  For identity to be suppressed under the Fifth Amendment, in other words, a defendant must show there is a link between identity and the evidence needed to prosecute him. The Court concluded that the defendant had failed to show a link between his identity and the crime. It explained: "in

---

[2] *INS v. Lopez-Mendoza,* 468 U.S. 1032 (1984).

[3] *Hiibel v. Sixth Judicial District*, 542 U.S. 177 (2004)

[4] *Id*. at 190.

[5] *Id*.

4

this case disclosure of [defendant's] name presented no reasonable danger of incrimination."[6] The Court left open the possibility that "a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link to the chain of evidence needed to convict the individual of a separate offense."[7]

In this case, furnishing his identity at the time the ICE agents asked him about his name gave ICE agents the link to the chain of evidence needed to charge Mr. Munoz of a illegal entry of removed alien.  After checking in the motel using a foreign identification card that had his name and picture, led Motel 6 employees to give his name to ICE agents, who then investigated his identity by walking to his motel room and entering it without his consent, the first thing agents asked him was his name.  Disclosing his name to them directly linked him to the offense; it was a fact that led federal agents to determine he had no legal status in the United States. Furnishing his name ICE agents were able to take his fingerprints and conduct a records check that lead information revealing he was not a United States citizen.  Without his identity officers would not have been able secure an arrest, let alone a criminal charge, especially since he was committing no other offense.  By disclosing his identity he effectively incriminated himself. That information is now being used to prosecute him.   In *Hiibel*, the Court explained that "the Fifth Amendment privilege against compulsory self-incrimination protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used."

Because it was more than reasonable that Mr. Munoz's identity could be used (and is being used) in this criminal prosecution when the agents interrogated him inside his Motel 6 room, he effectively incriminated himself; as such, his identity should be suppressed under the Fifth Amendment .

---

[6] *Id*. at 191.

[7] *Id*.

5

**B.    Mr. Munoz's Statements Should Also Be Suppressed Because He Was In Custody and Interrogated By ICE Agents.**

Before interrogating an in-custody suspect, police officers must first advise him of his *Miranda* rights.[8]  For *Miranda* warnings to apply, a suspect must be in 1) custody and 2) be interrogated by police.[9]  Federal courts define custody as the deprivation of "freedom of action in any significant way."[10]  Interrogation is defined as questions that are "reasonably likely to elicit an incriminating response from the suspect."[11]  The Ninth Circuit has determined that "Civil as well as criminal interrogation of in-custody defendants by INS investigators should generally be accompanied by *Miranda* warnings."[12]

1. Custody

Mr. Munoz was in police custody.  ICE agents conducted their investigation inside his motel room; there was no where else for him to go.  There were two agents visibly wearing their ICE badges, there was one entrance to the small room, which they blocked, and placed him in handcuffs.  In short, he was not free to leave.

2. Interrogation

Questions about his name, alienage, and prior immigration history were clearly intended to provoke incriminating responses.  That he was not yet under criminal investigation is of no moment because a civil administrative investigation does not render *Miranda* warnings inapplicable.[13]  Agents had reason to know that any admission of his identity and alienage would be highly incriminating.  When the agent encountered him inside his hotel room they were acting

---

[8] *Dickerson v. United States*, 530 U.S. 428 (2000)

[9] *Miranda v. Arizona*, 384 U.S. 436 (1966)

[10] *Id.* at 479.

[11] *United States v. Booth*, 669 F.2d. 1277, 1278-79 (9th Cir. 1983)

[12] *United States v. Mata-Abundiz*, 717 F.2d 1277, 1279 (9th Cir. 1983)

[13] *Id.* at 1279.

6

on information that Motel 6 had produced to them based on his foreign identification. The agent questioned Mr. Munoz about name, his alienage, his presence in the United States, and how entered the United States – all these questions are the elements contained in § 1326(a). But ICE agents never advised him of his *Miranda* rights. Whatever the case, it is clear that the agent never informed Mr. Huerta that his questioning of him was merely administrative. And even if he did, given the nature of the criminal offense, the Supreme Court has held that any, not criminal. Even if had, that alone would not have been enough to cure any *Miranda* infirmity. An "investigator cannot control the constitutional question by placing a 'civil' label on the investigation."[14] As the Ninth Circuit has determined, if "civil investigations by the INS [now ICE] were excluded from the Miranda rule, INS agents could evade that rule by labeling all investigations as civil."[15] Simply put, the agent knew his questions were likely to produce incriminating answers.[16]

## IV.   CONCLUSION

For the aforementioned reasons, Mr. Munoz moves this Court to suppress evidence, namely, his identity, and suppress his statements, as a result of a *Miranda* violation, under the Fifth Amendment of the U.S. Constitution.

RESPECTFULLY SUBMITTED: September 17, 2017

*s/ Juan L. Rocha*
**JUAN L. ROCHA**
Attorney for Defendant

---

[14] *Mata-Abundiz,* 171 F.2d at 1280.

[15] *Id*. at 1279.

[16] *Id.,* at 1280 ("The relationship of the question asked to the crime suspected is highly relevant" to whether the "elicitation of the information regarding immigration status is reasonably likely to inculpate the [defendant]").

7

1  *I hereby certify that on September 17, 2014, I electronically transmitted the attached Motion to Suppress Evidence and Statements to the Clerk's Office using the CM/ECF System for*
2  *filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrant*

3  Sheila Phillips
   Assistant United States Attorney
4

5  Copy Mailed to:

6  Mr. Munoz
7  Defendant