**JUAN L. ROCHA**
Rocha Law Offic
AZ Bar No. 025039
P.O. Box 5965
Mesa, Arizona, 85211-5965
Tel: (480) 855-1759
Fax: (855) 327-4858
jrocha.law@gmail.com
Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>v.<br><br>Manuel Humberto Ozuna Munoz,<br><br>    Defendant. | Case No. 2:17-cr-1078-DGC<br><br>**MOTION TO DISMISS THE INDICTMENT BASED ON ARTICLE 31 OF THE UNITED NATIONS CONVENTION AGAINST TORTURE**<br><br>(Evidentiary Hearing Requested) |

Excludable delay under 18 U.S.C. § 3161(h)(1)(D) may result from this motion or from an order based therein.

Defendant, Mr. Manuel Humberto Ozuna Munoz, by and through counsel undersigned, and under Federal Rule of Criminal Procedure, Rule 12(b)(3)(C), moves this Court to enter an Order dismissing the indictment. This request is supported by the following Memorandum of Points and Authorities.

RESPECTFULLY SUBMITTED: September 17, 2017.

                    *s/Juan L. Rocha*
                    **JUAN L. ROCHA**
                    Attorney for Defendant

## I.     FACTUAL BACKGROUND

On June 14, 2017, the Immigration and Customs Enforcement (ICE) Phoenix Mobile Criminal Alien Team Unit, received information that Mr. Munoz had checked into the Motel 6 on 52nd Drive in Phoenix. They were tipped off by employees at Motel 6 that he had checked into the hotel after he had used a Mexican driver license to check into the motel. Mr. Munoz did not have any outstanding warrants nor was he committing a federal, local, or state crime, or under suspicion of having committed such a crime.

After being detained by ICE agents, he was transported to the ICE field office and fingerprinted confirming his criminal and immigration history. At that field office, ICE agents were able to determine that he had entered the county at a place other than a port of entry. During this processing, moreover, Mr. Munoz told federal agents he had re-entered the country because he was seeking refuge in the United States. He told agents that his brother had been murdered in Mexico by unknown assailants, and that Mexican police were unable to protect him, let alone bring the culprits to justice. Having no where else to turn and sensing that his brother's murders were also looking for him, he made the decision to re-enter the United States to seek refuge. He did not, however, enter the United States through the port of entry. And not knowing the law of the United States he did not immediately ask for asylum. Still, the I-213 corroborates this statement; it indicates Mr. Munoz had a credible fear of returning to the Republic of Mexico. Despite this, the government prosecuted him for violating 8 U.S.C. § 1326(a), Reentry of Removed Alien.

## II.    ISSUE PRESENTED

Mr. Munoz contends he should not be subject to penalties for entering the United States illegally when seeking asylum because such penalties violate Article 31 of the Untied Nations treaty relating to the status of refugees, to which the United States is a party. *See* Convention Relating to the Status of Refugees, July 28, 1951, art. 31, 19 U.S.T. 6259, 6275, T.I.A.S. No. 6577, 189 U.N.T.S. 150.

## III. LAW AND ARGUMENT

### A. The Government's Criminal Prosecution of Mr. Munoz For Illegal Reentry Violates Article 31 of the United Nations Convention Against Torture.

Article 31(1) of the U.N. Convention Against Torture provides as follows:

> The Contracting States shall not impose penalties, on account of their illegal entry or presence, on refugees who, coming directly from a territory where their life or freedome was threatened in the sense of Article 1, enter or are present in their territory without authorization, provided they present themselves without delay to the authorities and show good cause for their illegal entry or presence.

Although the United States is not a signatory to the Convention Against Torture, it is bound to comply with the Convention pursuant to its accession to the United Nations Protocol Relating to the Status of Refugees, Jan. 31. 1967, 19 U.S.T. 6223. *See INS v. Stevic*, 467 U.S. 407, 416 (1984).

*Argument*

Mr. Munoz contends he cannot be prosecuted for illegal reentry because he entered the United States as a refugee under the Immigration and Nationality Act (INA) and under Article 31 The United Nations Convention Against Torture defines a "refugee" as one who, "owing to well-founded fear of being persecuted for reasons of race, religion, nationality, memberships of a particular social group or political opinion, is outside the country of his nationality and is unable or, or wing to such fear, is unwilling to avail himself of the protection of that country." 19 U.S.T. at 6261. The INA more or less adopts the same definition for asylum, INA § 208, and Withholding of Removal, § 208.16.

Mr. Munoz entered the United States because his brother had been murdered and feared that his life was endanger and because Mexican police were incapable of protecting him. He therefore qualifies for certain rights and protections under international law, protections that preclude the government from prosecuting him from illegally entering the country. That he had been previously removed or has a criminal history is irrelevant. An alien may apply for asylum and withholding of removal "irrespective of such alien's status," 8 U.S.C. § 1158(a)(1), because

to deny asylum relief to a refugee that has flouted a country's border control or immigration laws because of the urgency with which he was required to leave his home country would be to penalize him for the very fact of being a refugee. *See* 8 U.S.C. § 1101(a)(42) (recognizing that refugees, by definition, are fleeing persecution); UN Ad Hoc Committee on Refugees and Stateless Persons, Memorandum by the Secretary-General, UN Doc. E/AC.32/2, Ch. XI, Art. 24. Para. 2( Jan 3, 1950) ("A refugee whose departure from this country of origin is usually a flight, is rarely in a position to comply with the requirements for legal entry (possession of national passport and visa) into the country of refuge."). Prosecuting Mr. Munoz for illegally entering the country denies him the full scope of refugee protection on account of his illegal entry into the state's territory. *See* Refugee Convention, Introductory Note ("Prohibited penalties might include being charged with immigration or criminal offences relating to the seeking of asylum, or being arbitrarily detained purely on the basis of seeking asylum").

Here, the penalty imposed on him is in the form of a criminal charge and his current imprisonment, the very thing the Article 31 prohibits, without regard to the underlying circumstances in an alien's case. It is an impermissible penalty because the penalty was imposed before Mr. Munoz's status as a refugee could even be determined. *See e.g., U.S. v. Malenge*, 294 Fed.Appx. 642, 645 (2nd Cir. 2008) ("It appears that the USAO has instead established a blanket policy of immediately prosecuting asylum seekers for their use of false documentation. This practice is troubling, to say the least.") Determining whether Mr. Munoz qualifies for asylum, withholding of removal, or relief under the Convention Against Torture, in other words, is what Article 31 requires before a decision on criminal prosecution should be made.

And while Mr. Munoz failed to present himself at the port of entry and request asylum as requested by Article 31, this decision in and of itself does not mean the government is allowed to criminally prosecute him. As the Second Circuit explained in *Malenge*, "[i]t is clearly preferable that refugees announce themselves to American officials as soon as they reach the border. We do not take lightly the fact that Malenge tried to enter the country by presenting false

4

identification and lying to border officers. But we also recognize that some refugees, particularly those fleeting political violence, harbor a natural distrust of government officials. *** There is surely a more appropriate way to handle such cases, and to deter such conduct short of criminal prosecution." *Id.* at 645.  "Many police officers are 'involved in kidnapping, extortion, or providing protection for, or acting directly or on behalf of, organized crime and drug traffickers,' which leads to the "continued reluctance of many victims to file complaints." *Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013).  Moreover, Mr. Munoz entered the country illegally because he was unaware that he could safely enter legally. *See Melange*, Fed.Appx. at 645 ("This prosecution penalizes her for her ignorance, in contradiction of our government's policy of providing safe haven to refugees fleeing political violence and persecution. Moreover, this prosecution appears to place this United States Attorney's Office at odds with the Executive Branch as a whole, which has committed, through the above-cited international agreements, to avoid such penalties.).

Whether Mr. Munoz's claim of fear is credible or viable is irrelevant to the analysis of whether he may be criminally prosecuted for illegally entering the country under Article 31.[1] Further still, any argument that Mr. Munoz will have an opportunity to ask for asylum after he pleads guilty to § 1326(a) and after he serves his federal prison time is still violates Article 31, since it specifically says a person cannot be prosecuted for illegally entering a territory when looking for asylum.

///

///

---

[1] Section 235(b)(1)(B)(v) of the INA defines credible fear of persecution as: "a significant possibility, taking into account the credibility of the statements made by the alien in support of his or her claim and such other facts as are known to the officer, that the alien could establish eligibility for asylum under Section 208 [of the INA]."

The implementing regulations provide that an applicant will be found to have a credible fear of torture if the applicant demonstrates: "a significant possibility that he or she is eligible for withholding of removal or deferral or removal under the Convention Against Torture, pursuant to 8 CFR 208.16 or 208.17." *See* 8 CFR 208.30(e)(3).

## IV.   CONCLUSION

For the aforementioned reasons, Mr. Munoz moves this Court to dismiss the indictment levied against him because the government's criminal prosecution of him violates Article 31 of the U.N. Convention Against Torture since he was seeking asylum when he reentered the United States. The district court should order the Department of Homeland Security to provide him an interview to present his case.

RESPECTFULLY SUBMITTED: September 17, 2017


*s/ Juan L. Rocha*
**JUAN L. ROCHA**
Attorney for Defendant


*I hereby certify that on September 17, 2014, I electronically transmitted the attached Motion to Suppress Evidence and Statements to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic filing to the following CM/ECF registrant*

Sheila Phillips
Assistant United States Attorney

Copy Mailed to:

Mr. Munoz
Defendant