1  **WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | No. CR-17-1078 PHX DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Manual Humberto Ozuna Munoz, | |
| Defendant. | |

Defendant is charged with illegal reentry of a removed alien under 8 U.S.C. § 1326(a) and (b)(1). Defendant was removed from the United States in 2010, and was found at a Motel 6 in Phoenix, Arizona, in June of 2017. He has filed a motion to suppress (Doc. 13) and a motion to dismiss (Doc. 14).

**A.  Motion to Suppress.**

Defendant provides the following factual background for his motion to suppress:

> On June 14, 2017, the Immigration and Customs Enforcement (ICE) Phoenix Mobile Criminal Alien Team Unit, received information that Mr. Munoz had checked into the Motel 6 on 52nd Drive in Phoenix. They were tipped off by employees at Motel 6 that he had checked into the hotel after he had used a Mexican driver license to check into the motel. Mr. Munoz did not have any outstanding warrants nor was he committing a federal, local, or state crime, or under suspicion of having committed such a crime. By all accounts he was targeted for having a Spanish surname and using a foreign identification – a proxy for alienage.

> Knowing he had checked into room #214, two ICE agents knocked on the door. Mr. Munoz peeked through the window and saw the ICE agents dressed in civilian clothes. They waived for him to open the door. He did and the agents walked into room #214, without a warrant and without his consent. They immediately asked him his name and he told them. The agents then followed up by asking him if there was anyone else in the room, to put on his clothes, and handcuffed him. In less than five minutes the agents escorted him out of the room and into their squad car. He was transported to the ICE field office and fingerprinted confirming his criminal and immigration history. Based on this information, the U.S. Attorney's Office later filed a criminal complaint alleging he violated 8 U.S.C. § 1326(a), Illegal Reentry of Removed Alien.

Doc. 13 at 3.

Defendant contends that his identity can be suppressed under the Fifth Amendment because the agents failed to advise him of his *Miranda* rights before asking his name. To address this argument, the Court will review a number of cases that have addressed suppression of a defendant's identity in § 1326 cases.

The Court begins by noting this general guidance from the Supreme Court:

> Asking questions is an essential part of police investigations. In the ordinary course a police officer is free to ask a person for identification without implicating the Fourth Amendment. Interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.

*Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty.*, 542 U.S. 177, 185 (2004) (quotation marks, citation, and brackets omitted).

In *United States v. Del Toro Gudino*, 376 F.3d 997 (9th Cir. 2004), the Ninth Circuit provided this explanation of circuit case law:

> Our cases treat identity different from other kinds of evidence. Where mere identity is involved, the relevant circuit authority is *United States v. Guzman-Bruno*[, 27 F.3d 429 (9th Cir. 1994)]. *Guzman-Bruno*, like the case at bar, was a criminal prosecution under 8 U.S.C. § 1326. Like the case at bar, the defendant in *Guzman-Bruno* argued that all evidence of his identity learned in connection with his illegal arrest should be suppressed. We disagreed, reasoning that prior Supreme Court and

Ninth Circuit precedent "clearly foreclose[d] Guzman-Bruno's attempt to suppress the fact of his identity." We have consistently followed *Guzman-Bruno*'s holding as to identity evidence in a line of cases under § 1326.

*Id.* at 1000 (footnotes omitted).

The Ninth Circuit provided this additional explanation:

> Identity evidence is inherently different from other kinds of evidence, under [*I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984)] and under our cases. Five years before *Lopez-Mendoza*, we held in *United States v. Orozco-Rico*[, 589 F.2d 433, 435 (9th Cir. 1978)], a § 1326 case, that "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence." *Lopez-Mendoza* did not change that rule; it reinforced it. We continue to hold today that the simple fact of who a defendant is cannot be excluded, regardless of the nature of the violation leading to his identity. Other evidence, of course, may be suppressed consistent with *Gonzalez-Rivera* and our cases applying the exclusionary rule in the criminal context.

*Id.* at 1001 (footnote omitted).

The Ninth Circuit provided this further justification for its holding:

> Although the rule that identity evidence is not suppressible is not limited to § 1326 cases, its practical force is particularly great in this context. If a defendant's identity may be suppressed, the moment the court lets him go, he is immediately committing the continuing violation of being present in the United States after having been deported. This is the problem the Court found compelling in *Lopez-Mendoza*, when it noted that "[t]he constable's blunder may allow the criminal to go free, but we have never suggested that it allows the criminal to continue in the commission of an ongoing crime."

*Id.* at 1001-02 (citation omitted).

In *United States v. Ortiz-Hernandez*, 427 F.3d 567 (9th Cir. 2005), the Court of Appeals affirmed the suppression of a §1326 defendant's fingerprints, holding that they were obtained in violation of his Fourth Amendment rights. But the Ninth Circuit held that the government could obtain another set of his fingerprints from the defendant for purposes of proving his identify at trial:

- 3 -

> While the original set of Ortiz-Hernandez's fingerprints should be suppressed as wrongfully obtained, the government is now aware of Ortiz-Hernandez's identity; it may rely on his identity as well as his criminal and immigration record, in bringing § 1326 charges against him. As we have previously articulated, "there is no sanction to be applied when an illegal arrest only leads to discovery of the man's identity and that merely leads to the official file or other independent evidence" being brought before the court. *Guzman-Bruno*, 27 F.3d at 422 (internal quotation and citation omitted.)

*Id.* at 577 (citations omitted).

These cases clearly hold that Defendant's identity cannot be suppressed in this case, even if it was initially disclosed to agents as part of an illegal investigation or arrest. For this reason, the Court need not hold an evidentiary hearing into the circumstances of Defendant's arrest. Even accepting Defendant's version of the arrest as true, suppression of his identity is not warranted. And the government has made clear that it will not seek to introduce any of Defendant's other statements made at the time of his arrest.

Defendant argues that his identity should be suppressed under the Fifth Amendment, not the Fourth Amendment. He relies on language from the Supreme Court's decision in *Hiibel*. That case did note the possibility that disclosing one's name in some circumstances could be considered incriminating, but it suggested that such circumstances would be rare: "Answering a request to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances. In every criminal case, it is known and must be known who has been arrested and who is being tried." 542 U.S. at 191 (citations omitted). The Supreme Court then explained:

> Still, a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense. In that case, the court can then consider whether the privilege applies, and, if the Fifth Amendment has been violated, what remedy must follow. We need not resolve those questions here.

*Id.*

Defendant cites no case that has ever applied this language to hold that a § 1326 defendant's identity should be suppressed on Fifth Amendment grounds. And as shown above, the Ninth Circuit has held that such a defendant's identity cannot be excluded "regardless of the nature of the violation leading to his identity." *Del Toro Gudino*, 376 F.3d at 1001. The Court is not persuaded that disclosure of Defendant's name, even in an illegal arrest, violated the Fifth Amendment, or, if it did, that suppression of his identity would be the appropriate remedy in light of the cases discussed above. The Court accordingly will deny Defendant's motion to suppress his identity.

### B. Motion to Dismiss.

Defendant contends that he returned to the United States because of fear that he would be murdered in Mexico, and asks the Court to dismiss the indictment on the basis of Article 31(1) of the United Nations Convention Relating to the Status of Refugees, July 28, 1951, 189 U.N.T.S. 150. Although the United States is not a signatory to the Convention, it is bound to comply with the Convention due to its accession to the 1967 United Nations Protocol Relating to the Status of Refugees, January 31, 1967, 19 U.S.T. 6223 ("1967 Protocol"). *See I.N.S. v. Stevic*, 467 U.S. 407, 416 (1984).

Plaintiff's motion relies primarily on *United States v. Malenge*, 294 F. App'x 642 (2d Cir. 2008), but that case does not support his position. *Malenge* held that "[t]he 1967 Protocol . . . is not a self-executing treaty. Accordingly the Protocol does not provide Malenge with any judicially enforceable rights." *Id.* at 644. The Second Circuit affirmed the district court's denial of Malenge's motion to dismiss the criminal charges against her. *Id.* at 646.

Other cases have also held that the 1967 Protocol does not grant substantive rights to persons in the United States. *See Haitian Refugee Ctr., Inc. v. Baker*, 949 F.2d 1109, 1110 (11th Cir. 1991) ("The language of the [1967] Protocol and the history of the United States' accession to it leads to the conclusion that Article 33 is not self-executing and thus provides no enforceable rights to the Haitian plaintiffs in this case."); *Bertrand v.*

*Sava*, 684 F.2d 204, 218-19 (2d Cir. 1982) (finding that the 1967 Protocol's provisions "were not themselves a source of rights under our law unless and until Congress implemented them by appropriate legislation"); *Pierre v. United States*, 547 F.2d 1281, 1288 (5th Cir.) ("We agree with these conclusions and determine accordingly that accession to the [1967] Protocol by the United States was neither intended to nor had the effect of substantively altering the statutory immigration scheme."), *judgment vacated on other grounds*, 434 U.S. 962 (1977). These cases make clear that Defendant acquired no rights under the 1967 Protocol, including its incorporation of Article 31(1) of the United Nations Convention Relating to the Status of Refugees. Defendant accordingly cannot rely on these international agreements as a basis for dismissing his indictment.

The government also argues that Defendant would not qualify even if the agreements accorded him substantive rights. Article 31(1) protects asylum seekers who "present themselves without delay to the authorities and show good cause for their illegal entry or presence." Doc. 14 at 3. Defendant did not do this. He did not appear at a U.S. port of entry and ask for asylum. The government asserts that Defendant received *Miranda* warnings and then told the agents who arrested him that he crossed into the United States through the desert. Doc. 16-1 at 1, 4. The government further notes that Defendant was found by ICE investigators at a Motel 6 known for housing illegal aliens and located some 200 miles from the border. Doc. 16 at 2. In addition, Defendant was deported from the United States in 2011 and on two subsequent occasions before his arrest in this case. Doc. 16. These assertions do raise questions about Defendant's ability to qualify for protection under Article 31(1), but Defendant makes contrary arguments (Doc. 23), and the Court need not evaluate these issues in an evidentiary hearing. The international agreements on which Defendant relies are not self-executing, and, as several cases have recognized, do not confer substantive rights on Defendant.

**IT IS ORDERED** that Defendant's motion to suppress (Doc. 13) and motion to dismiss (Doc. 14) are **denied**.

Dated this 30th day of October, 2017.

_____
David G. Campbell
United States District Judge